UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

MASTER DOCKET

This document relates to:    04 Civ. 8611
04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OPINION


Appearances:


James L. Bernard
Quinlan D. Murphy
STROOCK & STROOCK & LAVAN LLP
*Attorneys for Grant Thornton International*


Bruce R. Braun
Linda T. Coberly
WINSTON & STRAWN LLP
*Attorneys for Grant Thornton LLP*


John B. Quinn
Peter E. Calamari
Loren Kieve
QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
*Attorneys for Dr. Enrico Bondi, Extraordinary*
*Commissioner of Parmalat Finanziaria S.p.A. and affiliates*

2

LEWIS A. KAPLAN, *District Judge.*

Grant Thornton International ("GTI") and Grant Thornton LLP ("GT LLP") (collectively, "GT") move for an order modifying the preliminary injunction previously entered under Section 304 of the Bankruptcy Code[1] (the "304 Order") to permit them to assert certain claims in the Securities Fraud Action and one of the Recovery Actions, as those terms were defined in *In re Parmalat Finanziaria S.p.A.*[2]  This order assumes familiarity with that opinion and with my unreported bench opinion of March 29, 2006, in which I granted a motion by Bank of America ("BoA") to modify the 304 Order.[3]

I

The scope of the present controversy is very narrow.  Dr. Bondi, the Extraordinary Commissioner of the Parmalat entities that are in bankruptcy proceedings in Italy and the plaintiff in the Recovery Actions, previously consented to the modification of the 304 Order to permit the assertion against Parmalat of compulsory counterclaims.  GT, for its part, seeks to assert only the following claims:

- • Counterclaims by GTI and GT LLP in the relevant Recovery Action for

---

[1]    11 U.S.C. § 304 (2004).  This section was repealed in 2005 but remains applicable where, as here, a case was commenced before the effective repeal date.

[2]    320 B.R. 46 (S.D.N.Y. 2005).

    Deloitte & Touche S.p.A. also moved for such relief.  That motion, however, has been withdrawn without prejudice to renewal.  04 MD 1653, docket item 1032.

[3]    05 Civ. 4015, docket item 100.

damages for spoliation of evidence.

- A counterclaim by GTI in the relevant Recovery Action and a third-party complaint in the Securities Fraud Action for contribution for any liability that GTI may be found to owe in the Securities Fraud Action.

Moreover, GT wishes only to liquidate in these actions the amount of any liability owed to it in excess of any amounts owed by it to Dr. Bondi.  It agrees that it will seek to enforce any judgment for any such amount only in Italy and that its enforceability would be a matter for determination of the Italian courts.

Dr. Bondi resists this application.  He begins by disputing that the counterclaims are compulsory, no doubt because he justifiably wishes to reconcile his present position with his previous consent to the assertion of compulsory counterclaims.  He argues that the interests of judicial economy do not compel allowance of GT's counterclaims and that impleader of Parmalat into the Securities Fraud Action would contravene the principles of Section 304 because it is unnecessary to just treatment and ignores the importance of comity.

II

Section 304 was enacted in 1978 "to deal with the complex and increasingly important problems involving the legal effect the United States courts will give to foreign bankruptcy proceedings."[4]  The statute provides that a court, in determining whether to grant Section 304 relief, "shall be guided by what will best assure an economical and expeditious administration

---

[4] *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 454 (2d Cir. 1985); *accord Bank of New York v. Treco* (*In re Treco*), 240 F.3d 148, 153 (2d Cir. 2001).

4

of [the foreign] estate, consistent with" six factors.[5]  Those most relevant here appear to be "comity"

and "just treatment of all holders of claims against or interests in [the foreign] estate."


A.      *The Spoliation Counterclaim*s

Dr. Bondi sues GT for damages on the theory that it was complicit in the massive

fraud allegedly committed by Parmalat insiders.  GT's spoliation claim alleges that Parmalat insiders

destroyed evidence as the fraud began to emerge into the public view in December 2003 and seeks

damages on the theory that GT was damaged by that destruction.

Federal Rule of Civil Procedure 13(a) states in substance that a counterclaim is

compulsory, so far as is relevant here, "if it arises out of the transaction or occurrence that is the

subject matter of the opposing party's claim."  While the meaning of "transaction or occurrence"

has been debated, the Second Circuit has written:

> "A claim is compulsory if 'a logical relationship exists between the claim and the
> counterclaim and [if] the essential facts of the claims are so logically connected that
> considerations of judicial economy and fairness dictate that all the issues be resolved
> in one lawsuit.'"[6]

Here, there is a logical relationship between the fraud alleged by Dr. Bondi and the

alleged spoliation by the insiders.  A trier of fact quite reasonably could infer that the spoliation was

a continuation of, and designed to conceal, the fraud that is the subject of Dr. Bondi's complaint.

In addition, there is a factual overlap between the claims.  The destruction of

---

[5]

    11 U.S.C. § 304(c) (2004).

[6]

    *Critical-Vac Filtration Corp. v. Minuteman Int'l Inc.*, 233 F.3d 697, 699 (2d Cir. 2000)
    (quoting *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotation marks in quoted
    case omitted)).

5

evidence by the Parmalat insiders is evidence of consciousness of guilt, which is relevant to GT's liability, at least to the extent that Dr. Bondi succeeds in showing that GT was complicit with them.

In consequence, the spoliation claim is a compulsory counterclaim.  In view of Dr. Bondi's consent to the assertion of compulsory counterclaims, he will not be heard to object to its assertion.  In any case, in view of the fact that the spoliation issue is likely to be litigated in the Recovery Actions both because it appears to go to GT's alleged liability and also would be asserted as a set-off, the Court can see no reason why the trier of fact should not also liquidate Parmalat's liability entirely.  In light of GT's commitment to leave the enforceability of any affirmative judgment to the Italian courts, comity does not even suggest, let alone require, declining to allow this claim.  Indeed, comity supports it, as liquidation of the claim would spare the Italian courts the burden of doing so.

B.      *The Contribution Claims*

GTI's proposal to assert a counterclaim in the Recovery Action and a third-party complaint in the Securities Fraud Action under the Private Securities Litigation Reform Act[7] ("PSLRA") for contribution from Parmalat toward any liability GTI ultimately may have in the Securities Fraud Action presents different issues.

The PSLRA provides in relevant part that "[a] covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other

---

[7]

Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u-4).

person who, if joined in the original action, would have been liable for the same damages."[8]  Thus,

the language suggests that the right of contribution arises only when a covered person is found

liable.  This indeed is consistent with the underpinnings of contribution, the right to which typically

is said to arise only upon the payment by one joint obligor of more than its equitable share of a

liability.[9]  And it is fatal, without regard to Section 304 of the Code, to GT's effort to interpose a

counterclaim for contribution in the Recovery Action.  But this does not dispose of the proposed

third-party complaint in the Securities Fraud Action because Federal Rule of Civil Procedure 14

creates an exception to the usual rule that a claim for contribution does not arise until payment of

a disproportionate share of a joint liability.[10]  In consequence, I must determine whether assertion

of the proposed third-party complaint is appropriate under Section 304.

Several factors favor assertion of the third-party complaint in this action.

First, assuming *arguendo*, as I must for this purpose, that the Securities Fraud Action

results in a judgment against GT, it is undeniable that the interests of judicial economy and the

policy of doing whatever would "best assure an economical and expeditious administration of [the

foreign] estate"[11] both would be served by liquidation of Parmalat's liability for contribution, if any,

in that case.  Certainly the Italian courts would benefit by having that liability determined here as

---

[8]

     15 U.S.C. § 78u-4(f)(8).

[9]

     *E.g.*, *Andrulonis v. United States*, 26 F.3d 1224, 1233-34 (2d Cir. 1994); *Mogil v. Gorgone*, 225 A.D.2d 674, 675, 639 N.Y.S.2d 484, 485 (2d Dept. 1996); *Alside, Inc. v. Spancrete Northeast, Inc.*, 84 A.D.2d 616, 617, 444 N.Y.S.2d 241, 242-43 (3d Dept. 1981).

[10]

     *Andrulonis*, 26 F.3d at 1233.  *See also Bay Ridge Air Rights, Inc. v. State*, 44 N.Y.2d 49, 54, 404 N.Y.S.2d 73, 74-75 (1978).

[11]

     11 U.S.C. § 304(c) (2004).

opposed to being confronted, probably years from now, with the need, in effect, to relitigate the Securities Fraud Action in Italy for the purpose of determining the respective shares of fault of GT and Parmalat under the complex and, to Italian courts, unfamiliar federal securities laws. Moreover, the interests of comity would be served fully by the fact that the enforceability of any contribution judgment would be reserved entirely to the Italian courts. Thus, it would be up to the Italian courts to decide whether a contribution judgment should be recognized at all and, if so, its consequences in the bankruptcy proceedings involving the Foreign Debtors.

The flip side of this coin is that the "just treatment of all holders of claims against or interests in [the foreign] estate"[12] – in this case, GT[13] – would be served by liquidation of the contribution claim here for much the same reason. Unless it were permitted to assert the contribution claim in the Securities Fraud Action, it would, should it be found liable there, be compelled to relitigate much of the case in the Italian courts in order to establish its claim for contribution.

Dr. Bondi nevertheless argues that the third-party complaint should be foreclosed. He contends principally that Section 304 is designed to centralize disputes over foreign bankruptcies in foreign courts and that GT would not have been permitted to bring the third-party complaint if Parmalat had been a debtor in a U.S. Chapter 11 case. But the arguments ultimately are not persuasive.

The central purposes of Section 304 are to "prevent the piecemeal distribution of

---

[12] *Id.*

[13] GT's contribution claim, while it has not accrued, nevertheless is a contingent claim. *Andrulonis*, 26 F.3d at 1233.

8

assets in the United States by means of legal proceedings initiated in domestic courts by local creditors"[14] and to "aid . . . a foreign proceeding pending in a foreign court."[15]  But interposition of the third-party claim for contribution threatens no piecemeal distribution of assets in light of GT's undertaking that enforceability and enforcement of any judgment will be left to the Italian courts.  Nor, for the reasons articulated above, would leaving the unliquidated contribution claim for litigation in Italy aid the Italian courts.  As I have indicated, quite the contrary is the case.

Dr. Bondi similarly overstates his case in claiming that GT's contribution claim would be foreclosed under Section 502(e) of the Code[16] if Parmalat were a U.S. debtor.

As an initial matter, the question is whether liquidation of the contribution claim here would help or hurt the Italian bankruptcy court, not how a similar claim would be treated here if Parmalat were a U.S. debtor.  As indicated above, allowing the claim to go forward to the limited extent proposed, in my view, would assist the Italian courts.  It certainly would not impair their ability to perform their function in light of the fact that the enforceability of any judgment would be left to them to decide.

Nor would Dr. Bondi be materially better off if the result under Section 502(e) did control the result under Section 304.  Section 502(e) requires disallowance of claims where three elements are established:

"First, the claim must be for reimbursement or contribution.  Second, the party

---

[14]

*In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 348 (2d Cir. 1992).

[15]

*In re Bird*, 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999) (quoting *In re Davis*, 191 B.R. 577, 582 (Bankr. S.D.N.Y. 1996) (internal quotations and citations omitted)).

[16]

11 U.S.C. § 502(e).

asserting the claim must be 'liable with the debtor' on the claim. Third, the claim must be contingent at the time of its allowance or disallowance."[17]

While GT's proposed third-party claim for contribution on the theory that, if GT is liable, Parmalat is liable with it, means that the third element is not satisfied here, this matter simply is not at that stage. What is at issue here is whether GT should be permitted to liquidate its claim, if any, in the Securities Fraud Action, not whether any such claim should be allowed or disallowed. In any case, the allowance or disallowance of any such claim will be a matter for the Italian courts.

While Dr. Bondi's arguments are not very persuasive, the Court is well aware that the involvement of Dr. Bondi in the Securities Fraud Action would require the expenditure of assets of the bankrupt estates that otherwise would not have been made at all or, at worst, would have been made only some time in the future and only in the event that GT first were found liable in the Securities Fraud Action and then pursued its contribution claim in Italy. This unquestionably cuts against allowing the assertion of the third-party contribution claim. In my view, however, this consideration is substantially outweighed by several considerations.

First, as discussed above, I believe that allowing the third-party complaint to proceed on the terms proposed would be the more efficient course. Even more important, it would be a substantial service to the Italian courts and would serve the overall interest in the swiftest possible resolution of the Foreign Debtors' bankruptcies.

Second, it seems to me relevant, although by no means dispositive, that Dr. Bondi has resorted eagerly to litigation in the United States by bringing the Recovery Actions against GT and others. I do recognize that involvement as a third-party defendant in the Securities Fraud

---

[17] *In re Drexel Burnham Lambert Group Inc.*, 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992).

Action, which Dr. Bondi did not bring and to which he is a stranger, is quite different from subjecting him to the normal responses of a U.S. defendant in an action brought by Dr. Bondi. Nevertheless, in my view, his equitable claim to the protection of the U.S. courts would have been stronger had he elected to pursue all of his claims in Italy, the jurisdiction in which the bankruptcies are pending, rather than resorting to U.S. litigation when it suits him and seeking protection of the U.S. courts against his involvement where it does not.

Finally, at the risk of descending too far from theory into the practical world, the likelihood that any of the actions consolidated before me under the Parmalat MDL actually will go to trial is very limited.  The exposures simply are too high.  Those cases that are not resolved by dispositive motions almost surely will be settled.  All of the litigants doubtless recognize this, and much of the procedural posturing that has gone on for years now – including Dr. Bondi's commencement of three Recovery Actions in widely separated state courts as opposed to bringing a single action in Italy or even in a single U.S. forum – accurately may be viewed as efforts by litigants to better position themselves for eventual settlement.  Certainly the process of settling the entire controversy, in all of its permutations, would be facilitated by having all potentially liable parties, including the Foreign Debtors, before the Court.  As I put it in granting BoA's motion, allowing appropriate claims against Dr. Bondi means that "everyone will have come to the dance, and there is a lot to be said for starting to play the music and letting the matter go forward and be resolved in one forum at one time . . ."[18]

---

[18] Tr., Mar. 29, 2006 (05 Civ. 4015, docket item 100), at 52.

11

III

      For the foregoing reasons, GT's motion to modify the 304 Order [04 MD 1653, docket items 435 and 439], as previously modified, is granted to the extent set forth above and denied in all other respects.  The foregoing constitute my findings of fact and conclusions of law.

      Settle order on two days' notice.

      SO ORDERED.

Dated:      February 5, 2007

                              Lewis A. Kaplan
                          United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)